**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KIM JACKSON, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 3:20-cv-00288-RCJ-CLB<br>) |
| CHRIS DUTRA, JASON EDMONSON, ERIC DEJESUS, | ) **ORDER**<br>)<br>) |
| Defendants. | )<br>) |

Pending before the Court are Plaintiff's Motion for Recusal, (Dkt. 83), and Motion to Strike, (Dkt. 89). For the following reasons, the Court denies both motions.

**I.  Background**

This is a 42 U.S.C. § 1983 case in which Plaintiff, Kim Jackson, brought claims for unlawful seizure, false arrest, and excessive force. (*See* Dkt. 1). In March 2022, the Court granted summary judgment in favor of Defendants and closed the case. (Dkt. 66 at 31). In the same order, the Court declined Defendants' request for sanctions in the form of attorney's fees despite finding that Plaintiff's attorney, Terri Keyser-Cooper, "show[ed] a repeated lack of candor to this Court,

fail[ed] to make reasonable efforts to comply with reasonable discovery requests in violation of Nevada Rules of Professional Conduct, and demonstrate[d] bad faith." (*Id.* at 30). Plaintiff appealed to the Ninth Circuit, which affirmed the Court's order in all but "the entry of summary judgment as to Jackson's excessive force claims against Officers Dutra and Dejesus." (Dkt. 76 at 4). Before going forward with remand on Jackson's excessive force claim, Jackson has moved for the Court's recusal.

## II. Legal Standards

### A. Motion to Strike

The Federal Rules of Civil Procedure allow courts "to strike portions of [a] complaint," *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000), containing defenses that are "insufficient" or "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is immaterial when it has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Czuchaj v. Conair Corp.*, 2014 WL 1666427, at *2 (S.D. Cal. Apr. 17, 2014). It is impertinent when it "includes statements that do not pertain, and are not necessary, to the issues in question." *Id.* And it is scandalous when it "includes allegations that cast a cruelly derogatory light on a party or other person." *Id.*

Ultimately, "the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Considering both this function and "the express language of the rule," it is established that "only *pleadings* are subject to motions to strike," not other documents, such as motions. *Id.* (emphasis added) (holding that the district court erred when it struck a motion to reconsider under Rule 12). Courts generally

disfavor motions to strike, which "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). Whether to strike material from the pleadings is left to the discretion of the district court. *Nurse*, 226 F.3d at 1000.

While the power to strike under Rule 12(f) extends only to pleadings, a court's inherent power to control its docket includes "the power to strike items from the docket as a sanction for litigation conduct." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998)). Exercises of a court's inherent powers are reviewed for abuse of discretion. *Id.* at 403–04; *Warren v. City of Henderson*, 2024 WL 279034, at *1 (D. Nev. Jan. 25, 2024). But exercises of these inherent powers, "[b]ecause of their very potency," must be done "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). To that end, "[i]n deciding whether to exercise their discretion to strike an improper filing," courts consider the context of the case, such as "whether striking the filing would further the overall resolution of the action[.]" *Warren*, 2024 WL 279034, at *1 (internal quotation marks and citation omitted).

Additionally, the authority to strike pursuant to the court's inherent powers is also recognized in this Court's Local Rules, which provide that "[t]he court may strike documents," including non-pleading documents such as motions, "that do not comply with these rules." LR IC 7-1. Application of a court's local rules is discretionary. *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Only in rare cases will we question the exercise of discretion in connection with the application of local rules." (citation omitted)).

### B. Motion for Recusal

Federal law requires that a judge "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Should a party in a case feel that "the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party," that party may file an affidavit, and if that affidavit is "timely and sufficient," then the presiding judge "shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. But "[o]nly after the legal sufficiency of the affidavit is determined does it become the duty of the judge to 'proceed no further' in the case." *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978) (quoting *United States v. Montecalvo*, 545 F.2d 684, 685 (9th Cir. 1976)). A review of the affidavit's sufficiency is properly performed by the presiding judge because "[inter] alia, 'the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *Id.* (quoting *Berger v. United States*, 255 U.S. 22, 33–34 (1922)). While the presiding just may not "pass on the truth or falsity of the facts alleged," he may "properly deny the affidavit for insufficiency if the facts, taken as true, do not provide fair support for the contention that statutory bias exists." *Id.* at 739.

"The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (citation omitted); *United States v. Wilkerson*, 208 F.3d 794, 797 (9th Cir. 2000). "Ordinarily, the alleged bias must stem from an 'extrajudicial source.'" *United States v. Hernandez*, 109 F.3d 1450, 1454 (9th Cir. 1997) (quoting *Liteky v. United States*, 510 U.S. 540,

554-56 (1994)). This is because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. The Supreme Court is clear that "[a]lmost invariably, they are proper grounds for appeal, not for recusal." *Id.* And similar to judicial rulings, "parties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." *McTiernan*, 695 F.3d at 891 (quoting *United States v. Frias–Ramirez*, 670 F.2d 849, 853 n.6 (9th Cir.1982)).

There is one exception, though, to the extrajudicial source rule in which recusal is mandatory on the basis of judicial rulings or the judge's beliefs or opinions: evidence of a deep-seated favoritism or antagonism that would make fair judgment impossible. *Liteky*, 510 U.S. at 555. As to judicial rulings, it is "only in the rarest circumstances" that they alone "evidence the degree of favoritism or antagonism required" to reasonably question impartiality "when no extrajudicial source is involved." *Id.* The Supreme Court is clear that "[a]lmost invariably, they are proper grounds for appeal, not for recusal." *Id.* As to opinions, there are some "rare" circumstances in which "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" evidence bias sufficient for recusal. *Id.* at 554–55. But judicial remarks or opinions expressed during the course of litigation that are merely "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* at 555. Such remarks "*may* [support a showing of bias] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (emphasis in original).

This exception to the extrajudicial source rule requires that such a "high degree" of bias be revealed in judicial rulings or remarks that would lead a reasonable person to "conclude that the judge's impartiality might reasonably be questioned." *Wilkerson*, 208 F.3d at 797. This is a highly demanding standard that requires "animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct." *Id.* at 797–99 (holding that neither judge's "expression of displeasure" nor his "commentary on his role as 'represent[ing] the community' and that the community was 'tired' of armed robbery and guns" were sufficient to question the judge's impartiality) (citation omitted); *Hernandez*, 109 F.3d at 1454 (holding that neither a letter from the presiding judge about defendant's case nor the judge's "allegedly prejudicial comments during voir dire" to which defendant never objected were sufficient to question the judge's impartiality).

Insufficient to establish bias are "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky*, 510 U.S. at 555–56. And "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556. Ultimately, only in rare circumstances can a party demonstrate "the kind of 'truly extreme' remarks that are required for recusal." *Wilkerson*, 208 F.3d at 799; *see also Liteky*, 510 U.S. at 556 (holding that the grounds raised to support recusal—"judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses"—were insufficient to overcome the extrajudicial source rule because they failed to "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible").

### III. Analysis

#### A. Motion to Strike

In her motion, Plaintiff asks the Court to strike the two exhibits[1] that Defendants attached to their brief in opposition to recusal, (Dkt. 87), arguing that the exhibits constitute "irrelevant person attacks on plaintiff's counsel Terri Keyser-Cooper." (Dkt. 89 at 2). She argues that such attacks are "frown[ed] on," (*id.* at 2–4), and this attack in particular is a "cheap shot," (*id.* at 5–17), that fails to distinguish between cautioning a lawyer and disciplining a lawyer. (*Id.* at 17–18). Additionally, she points out that the exhibits raise confidentiality concerns, (*id.* at 1), and notes the "ethical challenges of representing [the] client" in this case. (*Id.* at 4–5).

In response, Defendants argue that it was Keyser-Cooper that first raised the issue of her reputation in the recusal request despite its irrelevance to the request, (Dkt. 90 at 6–7), and that this entire issue "could have been avoided had immaterial bolstering based upon perceived reputation not been utilized in the underlying recusal motion." (*Id.* at 7). Explaining that the contested exhibits are not confidential, (*id.* at 4–5), Defendants assert that most of Plaintiff's arguments in support of her motion to strike lack any relevancy, (*id.* at 6–8), and those that are relevant are not "not accompanied by any points or authorities as required by Local Rule 7-2." (*Id.* at 5–6). For the following reasons, the Court agrees with Defendants.

---

[1] Exhibit 1 of Defendants' opposition brief is an email from the Head Administrator of the Office of Bar Counsel to Keyser-Cooper informing her of correspondence from the Bar after a grievance was filed against her. (Dkt. 87-1 at 2). Exhibit 2 is the correspondence that was attached to the email explaining that the grievance has been dismissed without "formal disciplinary proceedings," but that Keyser-Cooper is "cautioned [] regarding [her] ethical obligations[.]" (Dkt. 87-2 at 2).

While unnecessary personal attacks are a practice that the Court frowns upon,[2] Defendants' inclusion of the contested exhibits is not a gratuitous personal attack for its own sake. In her motion for recusal, Plaintiff explicitly notes that "Keyser-Cooper is a highly respected civil rights lawyer who has never been disciplined, chastised, or punished by any court or state bar." (Dkt. 83 at 8 n.3). And Defendants agree with Plaintiff that "Keyser-Cooper's reputation is irrelevant as to whether Plaintiff has established that Judge Jones has exhibited any bias or prejudice[.]" (Dkt. 90 at 6). But because Plaintiff relied on the supposed reputation of her attorney in arguing for recusal, (Dkt. 83-2 at 3), Defendants were not outside the bounds of professionalism by responding to (and clarifying) that line of reasoning. (*See* Dkt. 87 at 13 n.1). And Defendants' responsive argument merely asserts that it is, in fact, untrue that Keyser-Cooper has never been, as she called it, "chastised" by the Nevada State Bar. (*Id.*); (Dkt. 87-1); (Dkt. 87-2).

While Plaintiff attempts to split hairs as to whether the Bar's "caution[ing]" of Keyser-Cooper constitutes chastisement, (Dkt. 89 at 17–18); (Dkt. 87-1 at 2), the Court agrees with Defendants that "Keyser-Cooper's engagement of semantics as to the wording she utilized does not negate the undersigned attorneys' ethical obligations" "to be candid to this Court about this misstatement of fact."[3] (Dkt. 90 at 7); *see also* NRPC 3.3. Having relied on her history with the Bar to support the motion for recusal, the Court agrees that accurate details of the history are

---

[2] Defendants note the irony in Plaintiff's present motion scolding the use of personal attacks as unprofessional considering that her motion to recuse "is 'littered' with person attacks against Judge Jones." (Dkt. 90 at 6).

[3] Interestingly, in her recusal motion, Plaintiff takes issue with the Court's order on sanctions, which found that Keyser-Cooper "show[ed] a repeated lack of candor" throughout this litigation. (Dkt. 83 at 3, 8); (Dkt 66 at 30). This incident, which can reasonably be seen as a misstatement of fact, continues to evidence the lack of candor previously perceived by the Court.

certainly relevant. Considering that the challenged exhibits were filed in response to Plaintiff's reasoning in her recusal request, it is doubtful "whether striking the [exhibits] would further the overall resolution of the action[.]" *See Warren*, 2024 WL 279034, at *1 (internal quotation marks and citation omitted).

As to her other arguments, Plaintiff's discussion of the difficulties Keyser-Cooper faced in representing her client in this case bears little relevancy to whether the Court should strike the challenged exhibits. Plaintiff's strongest argument for striking the exhibits is the contention that they may be confidential, but this too falls short. It is true that the email provided in Exhibit 1 (the email to which Exhibit 2 was attached) contained a notice of confidentiality stating that "[t]he information transmitted is intended only for the person or entity to whom it is addressed and *may* contain confidential and/or privileged material." (Dkt. 87-1 at 2) (emphasis added). But the Nevada Supreme Court has provided rules establishing that such Bar proceedings are not confidential and, instead, "shall become public upon [their] conclusion, whether by dismissal or otherwise." Nev. Sup. Ct. R. 121(2). And neither is the email itself—which was received by a City of Sparks email address—confidential because public records such as this are subject to public dissemination under Nevada law. *See* N.R.S. 239.010. Thus, Plaintiff's motion to strike lacks merit, so the Court, in its discretion, declines to strike the challenged exhibits.

**B.     Motion for Recusal**

At the outset, Plaintiff requests that the Chief Judge be the one to review the pending recusal motion. (Dkt. 83 at 2). A threshold issue, this request is improper under current law, which provides that "[o]nly after the legal sufficiency of the affidavit is determined does it become the duty of the judge to 'proceed no further' in the case." *Azhocar*, 581 F.2d at 738; *United States v.*

*Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) ("If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits."); *see also* 28 U.S.C. § 144.  The Court has reviewed the affidavits attached to Plaintiff's pending motion, (Dkt. 83-1); (Dkt. 83-2), and find that they are legally insufficient for recusal because, taken as true, they "do not provide fair support for the contention that statutory bias exists." *Azhocar*, 581 F.2d at 738–39 (finding that presiding judge did not err by failing to assign Section 144 motion to another judge and noting that such a policy "would be unwise" because referencing "would be cumbersome and would further delay an already slow judicial process"); *see Berger*, 255 U.S. at 35 (explaining that before a judge can proceed no further in a case, an affidavit must satisfy the "essential condition" of showing "the objectionable inclination or disposition of the judge").

As discussed above, an affidavit is legally sufficient under Section 144 if, based on the facts provided therein, "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Hernandez*, 109 F.3d at 1453 (citation omitted).  Since the inception of Section 144, courts generally required that, to be disqualifying, the facts establishing "alleged bias and prejudice … must stem from an extrajudicial source." *Liteky*, 510 U.S. at 544–46 (cleaned up) (citation omitted).  Discussing the contours of this general requirement, the Supreme Court in *Liteky* explained that extrajudicial sources are a "*common* basis" for establishing bias, but they are not the "*only* basis[.]" *Id.* at 551.  While it is generally true that a judge is not necessarily disqualified for bias based on "opinions held [] as a result of what they learned in earlier proceedings," there are circumstances under which "[a] favorable or

unfavorable predisposition can [] deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Id.* Thus, the facts provided in an affidavit can be legally sufficient grounds for recusal without reference to any extrajudicial source when they evidence "judicial predispositions that go beyond what is normal and acceptable." *Id.* at 552.

The Supreme Court offered one example of judicial remarks that revealed the high degree of bias required to make fair judgment impossible: comments made by the district judge in *Berger* expressing a personal predisposition—specific to the defendants—that unquestionably went beyond the acceptable. *Liteky*, 510 U.S. at 555 (citing *Berger*, 255 U.S. at 28). The defendants in *Berger* were German-Americans charged with espionage, so the judge's remark that "[o]ne must have a very judicial mind, indeed, not to be prejudiced against the German Americans because their hearts are reeking with disloyalty," would leave any reasonable person with the impression that the judge could not possibly render fair judgment in the case. *Id.* (cleaned up).

But such circumstances are rare because "[i]mpartiality is not gullibility." *Id.* at 551 (citation omitted). The Supreme Court explains that "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." *Id.* at 550–51. In general, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* at 555. And, in this case, Plaintiff's

affidavit and accompanying memorandum attempting to establish facts that show bias rely entirely on opinions expressed in a judicial ruling.[4]

Plaintiff's bases for recusal all arise from the Court's order which granted summary judgment in favor of Defendants and declined to impose sanctions on Plaintiff and her attorney, (Dkt. 66). (*See* Dkt. 83 at 12) ("The Horror Show of Judge Jones' Order"). Among the arguments for recusal is the belief that adverse evidentiary ruling evidence bias against the Plaintiff and her attorney as well as favoritism towards the Defendants, but this belief is mistaken because the Court's determinations of credibility—a necessary part of the judicial role—do not "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Wilkerson*, 208 F.3d at 797–98; *Liteky*, 510 U.S. at 555.

First, Plaintiff argues that she has "set forth facts that Judge Jones condemned her as a liar, ignored all evidence to the contrary, and … disregarded the entirety of the medical evidence explaining the inconsistencies as deriving from Jackson's epilepsy disability." (Dkt. 83 at 10–11). In fact, the Court did consider Jackson's memory related explanation for her inconsistencies and destruction of evidence, (Dkt. 66 at 20—21), but chose not to excuse those discrepancies. *See also Hernandez*, 109 F.3d at 1452 ("Generally, the district court's admission of evidence is reviewed for an abuse of discretion."). The Court's disagreement with Plaintiff as to whether her discovery mistakes are excusable due to alleged memory issues certainly would not lead a reasonable person to believe that there are impartiality concerns because, despite not excusing those discrepancies,

---

[4] The only factual basis for recusal that can be said to rely on extrajudicial sources is Plaintiff's discussion of the Court's history in the Ninth Circuit. (Dkt. 83 at 22–35). The Ninth Circuit's conclusions in a previous case are entirely irrelevant to whether the Court has a particular bias in this case that makes fair judgment impossible. *See Liteky*, 510 U.S. at 548–50.

the Court still denied Defendants' request for sanctions. (*Id.* at 28); *see also United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983) ("That judges predictably reach conclusions on the evidence put before them does not prevent them from affording a defendant a fair and impartial trial[.]"). Plaintiff attempts to rely on cases dealing with adverse credibility determinations in the immigration context to support her argument, but those cases bear no relevance here. (Dkt. 83 at 6–8). Additionally, Jackson's reference to *Maheu v. Hughes Tool Co.* is inapplicable because the Court's credibility determinations have not impacted a jury. 569 F.2d 459, 472 (9th Cir. 1977). The facts set forth by Plaintiff do little more than quibble with the Court's order and are not legally sufficient to establish bias.

Next, Plaintiff's motion alleges that the Court "fervently vouched for the police defendants despite their self-admitted lack of credibility" and "ignored voluminous self-admitted lies of the officers[.]" (Dkt. 83 at 10, 18–21). Notably, neither affidavit offers any facts supporting the notion that the Court ever affirmatory "vouched" for Defendants and instead focuses on Jackson's feeling that she and her lawyer were not treated "the same" Defendants. (Dkt. 83-1 at 13). Keyser-Cooper's affidavit claims that the Court is biased because the Court's summary judgment order did not "address the officers' self-admitted lies on material issues." (Dkt. 83-2 at 2). Plaintiff argues that this "evinces a deep-seated favoritism towards the officers[.]" (*Id.* at 19). Defendants respond that there was no need for a discussion of the officers' credibility because Jackson's claims involved an objective reasonableness test, making the officers' "subjective intent and beliefs and perceived inconsistencies [] entirely irrelevant" to the Court's analysis. (Dkt. 87 at 15); *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021). Defendants also argue that the Court's order

undermines any allegation of favoritism because "the Court did not wholesale adopt Defendants' positions[.]" (*Id.* at 16) (citing Dkt. 66 at 2, 13).

Again, Plaintiff's factual basis for recusal is simply disagreement with a judicial ruling and does not indicate the requisite high degree of favoritism needed to be legally sufficient. *See Azhocar*, 581 F.2d at 739–40 (finding that judge's statement at a bail hearing that he "would not believe anything [defendant] testified to" were not legally sufficient for recusal because it "do not indicate that [the judge] would close his eyes and ears to other evidence later in [defendant's] trial bearing on [defendant's] credibility, or his guilt or innocence"); *Wilkerson*, 208 F.3d at 799 (holding that "the court's commentary on his role as representing the community and that the community was tired of armed robbery and guns does not demonstrate the kind of truly extreme remarks that are required for recusal (cleaned up)).

Finally, Plaintiff asserts that "Judge Jones has attacked [Keyser-Cooper] personally for doing her best work," evidencing bias against Keyser-Cooper. (Dkt. 83-1 at 3). She claims that the Court "blamed [Keyser-Cooper] for [Jackon's] inconsistent memory" by helping her change her story. (*Id.* at 8) (citing Dkt. 66 at 30). In her affidavit, Keyser-Cooper states that "Judge Jones has displayed an extreme personal antagonism toward [her] that is unwarranted by the record," as evidenced by the Court's findings in the order denying sanctions. (Dkt. 83-2 at 3) (citing Dkt. 66 at 30). Keyser-Cooper argues that she has "an outstanding reputation as an attorney" and has never "been accused of bad faith" or of "lacking candor before any court." (*Id.*). But, again, Plaintiff's arguments—which are simply dissatisfaction with the findings necessary to resolve a motion for sanctions—fail to meet the deep-seated antagonism required by *Liteky*. 510 U.S. at 550–51 ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed

towards the defendant, who has been shown to be a thoroughly reprehensible person.  But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.").  It is also worth noting that Plaintiff relies entirely on the Court's order—and not any transcripts—to allege bias, and the findings in the order were necessary to the resolution of a motion for sanctions, not gratuitous expressions of "disapproval" towards Keyser-Cooper, which, regardless, would still be insufficient for recusal.  *See United States v. McTiernan*, 695 F.3d 882, 892 (9th Cir. 2012) (holding that statements demonstrating "an attitude of disapproval" towards defendant "because of his known conduct" did not demonstrate deep-seated animus).

Each concern raised in Plaintiff's affidavits is an argument based on judicial rulings which are "proper grounds for appeal, not recusal." *Liteky*, 510 U.S. at 555.  After appeal, there remains one fact question in this case "as to when Jackson ceased resisting and whether the officers' use of force continued after the emergency had ended." (Dkt. 76 at 3); *see McTiernan*, 695 F.3d at 893 (noting that judge's strongly worded statement against need for an evidentiary hearing did not require recusal after court of appeals vacated order and directed the judge to hold an evidentiary hearing because "it has long been regarded as normal and proper for a judge to sit in the same case upon its remand" (cleaned up) (quoting *Liteky*, 510 U.S. at 551)).  The Court's previous ruling is not one of the "rare[] circumstances" in which a judicial ruling "evidences the degree of favoritism or antagonism required" for recusal.  *Liteky*, 510 U.S. at 555.

Neither do the Court's opinions articulated in the order, which were "formed by the [the Court] on the basis of facts introduced or events occurring in the course of the current proceedings

… display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Taken as true, the contested opinions are certainly not "the kind of truly extreme remarks" that would lead a reasonable person to believe that the Court bears an "animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct." *Wilkerson*, 208 F.3d at 799 (cleaned up). For all these reasons, the Court finds that Plaintiff's affidavits fail to meet the legal sufficiency required by Section 144.

While the Court denies Plaintiff's motion, the Court will request that the Chief Judge reassign the case at this time. The undersigned is quickly approaching the time to take inactive status. This case will almost certainly go to trial after that time, so it would be an inefficient use of judicial resources to hold off on reassigning this case. For that reason, the Court asks that the case be reassigned at this time.

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion to Strike, (Dkt. 89), is **DENIED**. IT IS FURTHER ORDERED that Plaintiff's Motion for Recusal, (Dkt. 83), is **DENIED**.

IT IS FURTHER ORDERED that, with the Chief Judge's permission, the Clerk of the Court shall **REASSIGN** the case at this time.

IT IS SO ORDERED.

Dated May 3, 2024.

                                                                                   ROBERT C. JONES
                                                                               United States District Judge